## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

GLORIA KINNEY,

                Plaintiff,             :        Case No. 3:05-cv-272

                                              District Judge Walter Herbert Rice
       -vs-                             Chief Magistrate Judge Michael R. Merz
                          :

JOHN E. POTTER, Postmaster General,

                Defendant.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 29).
Plaintiff has filed an "Answer" to the Motion (Doc. No. 35) and Defendant has filed a Response in
Support (Doc. No. 37).

Plaintiff is proceeding *pro se* in this case[1].  Such cases filed at the Dayton location of court
are randomly referred to a Magistrate Judge for all pretrial purposes, including a report and
recommendations on all dispositive motions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On

---

[1]The case was originally filed by counsel who later withdrew.  This case was referred to a
Magistrate Judge only after Plaintiff elected to proceed *pro se*.

a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's

evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.,* 968 F. 2d 606, (6th Cir. 1992), *cert. denied,* 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The proposed findings of fact set forth in this Report are admitted or established by evidence competent under Fed. R. Civ. P. 56(e) and not controverted by opposing competent evidence.

## Analysis

Plaintiff brought this employment discrimination case pursuant to Title VII of the Civil Rights Act of 1964, Sections 501 and 502 of the Rehabilitation Act of 1973, and the Privacy Act, 5 U.S.C. § 552. (Complaint, Doc. 1, p. 2.)  Her claims are based on race, sex, disability, and retaliation for prior EEO activity. *Id*. at 4. These claims grow out of events that occurred while she was employed as the Lead Sales Clerk at the Dayton View Branch of the United States Postal Service (USPS).  In the Complaint she specifically adverts to an incident occurring on November 21, 2001 (being assigned to pull APC flats), and an improper assignment to emergency placement. She also complains generally of a hostile work environment and of being denied overtime while white counterparts were permitted to work overtime.

Plaintiff attached to her Complaint a copy of the May 6, 2005, Final Agency Decision ("FAD") in this case.  (Complaint, Doc. 1, Exhibit A.) According to the FAD, Plaintiff complained about five specific occurrences, which were investigated at the administrative level. These five occurrences are:

(1) November 21, 2001 – her supervisor (S1) instructed her to pull APC's of flats against her job restrictions;

(2) December 1, 2001 – S1 instructed her not to report for overtime as scheduled;

(3) December 21, 2001 – S1 charged at her while badgering her about opening the customer window, striking her with his buttocks, back and body, triggering her into an anxiety attack;

4

(4) June 4, 2002 – she was told not to report until further notice; and,

(5) July 1, 2002 – after signing the job offer, S1's supervisor told her to leave and he would be in touch. (Doc. 1, Exhibit A, pp. 1-2.) According to her deposition testimony, these were the only claims that Plaintiff presented to the EEO for investigation in this case. (Plaintiff's Deposition, Doc. No. 31, at 75.)

**The Facts According to Defendant's Motion:**

Defendant's Summary Judgment Motion is supported by the administrative hearing testimony of Kenneth Strickland, the Plaintiff's deposition testimony, and the Affidavits of Kenneth Hogan and William Campbell. All of these sources are proper for consideration on a motion for summary judgment under Fed. R. Civ. P. 56(e). According to Defendant's evidence, the facts are as follows:

**The November 21, 2001, Incident**

Plaintiff claims that she was discriminated against on November 21, 2001, when she was instructed by her supervisor, Kenneth Strickland, to pull APC flats, which was against one of her job restrictions. (Plaintiff's Dep., pp 11-12.) She explained that an APC is a metal carrier, approximately seven and one half feet tall and three feet wide. It has trays in it and it is used to transport sorted mail to different mail carriers for them to distribute on their routes. (Plaintiff's Dep., p. 11.) Mr. Strickland testified under oath at the August 12, 2004, hearing that he was unaware on November 21, 2001, that Plaintiff had any job restriction restricting her from pulling APCs. His testimony is attached to Defendant's Summary Judgment Motion.

Mr. Strickland testified that he was first assigned to the Dayton View branch post office at the same time that Kenneth Hogan arrived there. (Strickland testimony, pp. 206-207.) Mr. Hogan

started at the Dayton View USPS in September, 2001. (Affidavit of Kenneth C. Hogan (Hogan Aff.), ¶ 3.) Mr. Strickland was only working at the Dayton View Branch for a few months before the November, 2001 APC incident with Plaintiff. Mr. Strickland was the letter carrier supervisor. Plaintiff, who was not a letter carrier, was supervised by David Ward and not by Mr. Strickland. (Strickland testimony, p. 207; Plaintiff's Dep., p. 44.) Mr. Strickland testified that he "did not know that she had restrictions at that time . . .it wasn't offered to me that she had restrictions. She actually took the flats around." (Strickland testimony, p. 208.) Plaintiff did not tell Mr. Strickland that she was not able to pull APCs and flats around. (Strickland testimony, p. 209.) No one ever presented medical documentation to Mr. Strickland regarding Plaintiff's job injuries or anything else to suggest that Plaintiff "might be considered a person with a disability under the Rehab Act or ADA or anything." (Strickland testimony, p. 216.)

Plaintiff admitted in her deposition that she did not know if Mr. Strickland ever saw her medical documentation. "I can't say that he did because he was mainly the carrier supervisor." (Plaintiff's Dep., p. 44.) Plaintiff also admitted in her deposition that she was not aware of any other evidence that would suggest that Mr. Strickland was aware, on November 21, 2001, that she was restricted from pulling APCs at the post office. (Plaintiff's Dep., p. 45.)

**The December 1, 2001 Incident**

Mr. Strickland testified about this incident during the administrative hearing as follows:

> Q. Okay. So then let me go to a week or so later when we're talking of December the 1st, 2001, Ken Strickland gave her instructions not to report for overtime as had been scheduled.
>
> A. Uh-huh.
>
> Q. Do you recall that incident?
>
> A. Very vividly.

6

Q. Well, just tell the Judge about it.

A. What had happened, the day prior we'd had some people off work. I thought we were going to be shorthanded the following day. I told Gloria the day prior that I'd use her to work the next day, she said fine.  Later on that day one of the clerks I assumed would be off the next day called me, said that they would be to work. What that meant was, that I was not going to be shorthanded the following day.  I called Ms. Kinney the next morning and I told her that I know I had scheduled her to work. That if she preferred to have the day off, that was fine. But since I had already scheduled her, she's entitled to work and it was up to her. It was her choice whether or not she wanted to work. She told me she would take the day off.

Q. So she didn't come in that day?

A. She did not come in that day.

(Strickland testimony, pp. 209-210.)

Plaintiff testified in her deposition that she believed that she was instructed not to report for overtime because of her disability and her race. (Plaintiff's Dep., p. 49.) She explained that she "had some stress issues." *Id*. She also testified that she believed that Mr. Strickland was aware of these stress issues. (Plaintiff's Dep., p. 50.) She was not aware of any other evidence to support this claim. (Plaintiff's Dep., p. 52.)

Despite Plaintiff's claim that Mr. Strickland was aware of her "stress issues," Mr. Strickland testified that the only restriction that he knew of at that time was that Plaintiff could only work the window for a couple of hours a day. (Strickland testimony, p. 215.) Mr. Strickland testified he never saw any of Plaintiff's medical documentation or anything else that would cause him to consider Plaintiff to be disabled. (Strickland testimony, p. 216.)

**The December 21, 2001 Incident**

The Administrative Judge concluded that Plaintiff was discriminated against because of her race and sex when she was placed on emergency placement on December 21, 2001. (Doc. 1, Ex. A,

p. 2.) The EEOC awarded Plaintiff $300.00 in nonpecuniary damages and also awarded her back pay for any lost wages that resulted from this incident. (FAD at 5.)

The USPS paid $300.00 to Plaintiff for non-pecuniary damages by way of a check dated April 28, 2005. (Affidavit of William G. Campbell (Campbell Aff.), ¶5 and Ex. 1 attached thereto.) Moreover, the USPS calculated Plaintiff's lost wages resulting from the emergency placement as $165.00. Plaintiff was paid $165.00 in back pay by way of an adjustment and additional pay to her in pay period 12 of calendar year 2005. *Id.*

By way of an FAD on attorney's fees issued in this case on November 5, 2004, Plaintiff was awarded $870.00 in attorney's fees. (Campbell Aff., ¶6.) However, since Plaintiff was represented by Albert Myles III in the administrative proceedings and since Mr. Myles never provided the agency with documentation to show that he was an attorney-at-law licensed to practice law in the State of Ohio, no attorney's fees were paid in this case.

Plaintiff admitted in her deposition that she did receive a check for $300.00 from the USPS as payment for her non-pecuniary damages in this case. (Plaintiff's Dep., p. 16.) She also admitted that she could not say whether or not she was paid $165.00 for lost wages. (Plaintiff's Dep., p. 19.) In addition, she also admitted that she did not know whether or not Mr. Myles was an attorney. She admitted that Mr. Myles never represented himself to her as being an attorney. (Plaintiff's Dep., pp. 22-23.)

**The June 4, 2002, and July 1, 2002, Incidents**

No reference is made to these two incidents in Plaintiff's Complaint and they were not raised in the administrative appeal which resulted in the Final Agency Decision attached to the Complaint.

Plaintiff testified in her deposition that Kenneth Hogan was the USPS person involved in

these two incidents. (Plaintiff's Dep., pp. 54, 72.) She also testified that she believed that these incidents occurred as retaliation for her prior EEO activity. (Plaintiff's Dep., pp. 63-64, 72.) Mr. Hogan testified that he was not even aware of Plaintiff's prior EEO activity at the time of these two incidents. (Hogan Aff., ¶¶ 5, 7.) He also testified that he did not take the action he took on June 4, 2002, or July 1, 2002, as a form of retaliation against Plaintiff. *Id.* Rather, he took this action for the legitimate business reasons explained in his affidavit. (Hogan Aff., ¶¶ 4, 6.) Plaintiff testified she is not aware of any evidence to refute Mr. Hogan's affidavit.

**The Facts and Factual Disputes According to Plaintiff's "Answer":**

Plaintiff asserts the Final Agency Decision involved six, not five, specific incidents of violations of the law. To the ones noted by Defendant, she adds a claim that Mr. Strickland's supervisor, Mr. Hogan, was aware of the December 21, 2001, incident and chose to "cover" for Strickland.

Plaintiff has attached a number of documents to her "Answer" which are as follows:

1. Plaintiff Doc. 1[2], Ex. A: What appears to be the first two pages of the EEOC Decision on Appeal from the Administrative Judge decision in this case.

2. Plaintiff Doc. 2, Exhibit B: The first two pages of Defendant's Answer in this case (Doc. No. 12).

3. Plaintiff's Doc. 3, Exhibit C: Pages 166-181, 162-165, and 158-161 (in that order) from the transcript of the August 12, 2004, Hearing.

_____

[2]It is the convention in writing in this Court to refer to documents which have been filed by the docket number assigned to them by the Clerk, abbreviating that designation as "Doc. No. ___." To avoid confusion, the Magistrate Judge used herein the customary court designation and refers to Plaintiff's documentation at "Plaintiff's Doc. ___."

4.      Plaintiff's Doc. 4, Exhibit D: Pages 221, 222, and 226 from the July 25, 2002, Affidavit of Ken Hogan, accompanied by one page of Affidavit Questions for Hogan, one page of Request for Affidavit Amended Complaint for Hogan, and one page of Request for Affidavit Ken Hogan (these latter three pages bear hand-lettered numbers 228, 312, and 317 in the lower right-hand corner).

5.      Plaintiff's Doc. 5, Exhibit E: June 28, 2002, Affidavit of Gloria Kinney (bearing hand-lettered numbers 10-21 in the lower right-hand corner). Attached are documents labeled "Attachment" bearing hand-lettered numbers 22-30, 34 and 35 in the lower right-hand corner.

6.      Plaintiff's Doc 6, Exhibit F: A Notification of Personnel Action with respect to Plaintiff dated December 16, 2006.

7.      Plaintiff's Doc. 7, Exhibit G: Pages 213, 215, 216, and 218 of January 4, 2003 Affidavit of Kenneth Strickland, accompanied by one page of a document labeled Request for Affidavit Amended Complaint Kent Strickland (bearing hand-lettered number 293 in the lower right-hand corner) and one page of a document labeled Request for Affidavit Kent Strickland (bearing hand-lettered number 297 in the lower right-hand corner).

8.      Plaintiff's Doc. 8, Exhibit H: Pages 218-221, 214-217, 210-213, 206-209, and 202-205 (in that order) from the transcript of the August 12, 2004, Hearing.

9.      Plaintiff's Doc 9, Exhibit I: Pages 242-245 and 238-241 (in that order) from the transcript of the August 12, 2004, Hearing.

10.     Plaintiff's Doc. 10, Exhibit J: Pages 46-49, 6-9, 10-13, 22-41, and 74-77 of Plaintiff's Deposition (Doc. No. 31).

11.     Plaintiff's Doc 11, Exhibit K: The 3-page report of Dispute Resolution Specialist Natalia McClain-Furr relating to the December 21, 2001, incident.

12.     Plaintiff's Doc 12, Exhibit L: A 3-page letter from Cindy Marshall, Senior Claims Examiner

for the Department of Labor Office of Workers Comp Programs relating to a November 1, 1999, injury of the Plaintiff.

Relying on these sources, Plaintiff asserts that the following material facts are in dispute:

**November 21, 2001, Incident:**

As to the November 21, 2001, incident, Plaintiff claims there is evidence in the record showing that Mr. Strickland was aware as of that date that her work restrictions prevented her from "pulling flats."  What she principally refers to is her own Affidavit, given as part of the administrative process, that Strickland would have overheard her talking about these restrictions several days earlier.  It is, however, well settled that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his [or her] earlier deposition testimony." *Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 315 (6th Cir. 1989), quoting *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir. 1986); *accord Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)(quoting *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir. 1969); *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540 (9th Cir. 1975); *Camfield Tires, Inc., v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir. 1983).


**December 1, 2001, Incident:**

December 1, 2001, was a Saturday; the next work day for a branch Postal Service employee would have been, as Plaintiff points out, Monday, December 3, 2001.  Plaintiff claims she worked overtime eight hours on December 1, 2001, and was told by a Mr. Ward when she left that day that she was not to come in early on December 3, 2001, as previously scheduled because Mr. Strickland had told Mr. Ward that he didn't need her.  She references page 223 of the 8/12/2004 hearing transcript, but has not filed a copy.  Assuming the hearing testimony is as she represents, it is not inconsistent with Strickland's account in any material respect: he admits that she had been

scheduled, but the clerk she was expected to fill in for let Strickland know that he or she could work. Nothing is said about the race, gender, or disability status of the other employee or why his or her being able to work would not have been a correct reason to cancel another employee's scheduled overtime.

**The December 21, 2001, Incident**

Defendant asserts this claim was fully resolved when it paid her $300 in non-pecuniary damages and $165.00 in back pay when ordered to do so by the EEOC. Plaintiff does not dispute the legal proposition that her acceptance of that award would fully resolve the claim. Instead, she asserts that the Postal Service did not comply with the Administrative Judge's order. However, all Plaintiff says in her Response is that she is only certain she received the $300 and that if she received the $165.00, there was no interest included as required by regulation.

Plaintiff's inability to remember receiving the $165.00 does not create a genuine issue of material fact because Mr. Campbell's Affidavit shows with documentary proof that the $165.00 was in fact paid to Plaintiff. Nothing in the regulation cited by Plaintiff calls for the payment of interest and the money was in fact paid within close proximity of the Final EEOC Order.

**The June 4, 2002, and July 1, 2002, Incidents**

As noted above, Defendant claims Plaintiff did not sue on these two incidents and did not include them in her administrative appeal. Plaintiff responds that there was an amendment to the initial EEOC claims to include these incidents, but she does not provide the Court with any copy of the amendment, nor does she reference any place in the Complaint where these incidents are referred to. The incidents are mentioned in the Final Agency Decision, but only the other three incidents are ruled on; the EEOC upheld the finding of the Administrative Judge of no discrimination in the

November 21, 2001, and December 1, 2001, incidents, and discrimination in the December 21, 2001, incident.

Plaintiff references pages of the August 12, 2004, hearing transcript where these incidents are allegedly testified about, but she has not furnished the Court with a copy of those pages. Most importantly, she asserts she has provided evidence that Mr. Hogan, the alleged discriminating official, knew of her prior EEO activity when he made the decisions involved in the June 4, 2002, and July 1, 2002, incidents. Mr. Hogan has filed an Affidavit, attached to Defendant's Summary Judgment Motion, in which he claims he did not know of the EEO filings. (Hogan Affidavit, ¶ 7.) To rebut this, Plaintiff refers to Plaintiff's Doc 11, Exhibit K, which is the 3-page report of Dispute Resolution Specialist Natalia McClain-Furr relating to the December 21, 2001, incident. This unsworn hearsay report of Ms. McClain-Furr does not qualify as proper evidence under Fed. R. Civ. P. 56(e). Furthermore, the two incidents in question both involve Mr. Hogan making job offers to Ms. Kinney which she rejected. Mr. Hogan proffers a legitimate business purpose for making the offers – they were the only positions he had available which fit Plaintiff's medical restrictions. Plaintiff has offered no rebuttal to that evidence.

**Applicable Law**

The essential factual inquiry in a case of alleged employment discrimination under Title VII is "whether the defendant intentionally discriminated against the plaintiff." *United States Postal Service Board of Governors v. Likens*, 460 U. S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U. S. 248, 253, 101 S. Ct. 1089, 1093, 67 L.Ed.2d 207 (1981);

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

In a "disparate treatment" employment discrimination case, proof of discriminatory motive is an essential element of the plaintiff's proof. *International Brotherhood of Teamsters v. United States,* 431 U. S. 324, 335 n. 15, 97 S. Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The plaintiff thus must prove (1) differences in treatment, and (2) a discriminatory motive on the part of the employer. *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672 (6th Cir.1986).

The general rules governing the order and allocation of proof in an individual, non-class action alleging that an employment decision was discriminatory are set forth in *McDonnell Douglas Corp. v. Green,* 411 U. S. 792, 800-02, 93 S. Ct. 1817, 1823-24, 36 L.Ed.2d 668 (1973).

The *McDonnell Douglas* analytical framework is to be used in a disparate treatment case. *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 279 (6th Cir.1991). To establish a prima facie case of disparate treatment, a plaintiff is required to show 1) that he or she is  a member of a protected class, 2) that a similarly situated non-protected persons received dissimilar (better) treatment, and 3) that sufficient evidence exists from which the Court can find a causal connection between race or sex and the dissimilar treatment. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1270 (6th Cir.1986).

> Where, as here, a case is at the summary judgment stage and a plaintiff seeks to prove discrimination via indirect, rather than direct, evidence, the plaintiff must submit evidence from which a reasonable jury could conclude both that she has established a prima facie case of discrimination and that the defendant's legitimate, nondiscriminatory reason for its action, if any, is pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).

*Vincent v. Brewer Co.*, 514 F.3d 489 (6th Cir. 2007).

Where a plaintiff alleges disparate treatment, courts " 'require indirect evidence from which an inference of discriminatory motive may be drawn, namely comparative evidence demonstrating

14

that the treatment of plaintiff differs from that accorded to otherwise "similarly situated" individuals who are not within the plaintiffs protected group'." *Shah v. General Electric Co.*, 816 F.2d 264, 268 (6th Cir.1987) (quoting B. Schlei & P. Grossman, EMPLOYMENT DISCRIMINATION LAW, at 1291 (2d ed. 1983). It is the plaintiff's burden to establish a similarity between his or her conduct and the conduct of other employees outside his or her protected class who she claims were treated differently. *Beaven*, 783 F.2d at 625-76.

Where a plaintiff alleges that employees outside of her protected class were treated differently, the difference in treatment is probative of discrimination only if the employees were so similarly situated to the plaintiff that the most likely reason for treating the plaintiff differently was her race or sex. *See, Furnco Construction Co. v. Waters*, 438 U. S. 567, 577, 98 S. Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). If nondiscriminatory explanations will account for the differences in treatment as readily as, for example, a plaintiff's race or sex, she has not shown that the most probable explanation is her race or sex. *See, Texas Dept. of Community Affairs,* 450 U.S at 258, 101 S. Ct. at 1096 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.")

> Employees are not 'similarly situated' merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have been subjected to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline of it.

*Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y.1986), *affd without op.,* 814 F.2d 653 (2d Cir.1987), cited approvingly in *Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir. 1992). For example, a different supervisor can suggest a basis other than sex or race for the difference in treatment received by two employees. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1271 (6th Cir.1986). *See also, Jones v. Gerwens,* 874 F.2d 1534, 1541 (11th Cir.1989); *Tate v.*

*Weyerhaeuser Co.*, 723 F.2d 598, 606 (8th Cir.1983), (different disciplinary measures distinguished because different supervisory personnel were involved); *Thomas v. Florida Power & Light Co.*, 532 So.2d 1060, 1988 WL 142151 (S.D.Fla.1988) (plaintiff not similarly situated to comparative employee because they had different supervisors and worked at different facilities); *Lynch. v. Dean*, 1985 WL 56683 (M.D.Tenn.1985), *rev'd on other grounds,* 817 F.2d 380 (6thCir.1987) (proof that plaintiff was disciplined more severely than workers under supervision of another foreman did not aid plaintiff in showing she was victim of discrimination); *Talley v. U. S. Postal Service*, 33 FEP Cases 233, 238 (E.D.Mo.1982), *aff'd*, 720 F.2d 505 (8th Cir.1983) (none of employees worked for plaintiff's supervisor, whose motivation was at issue; therefore, employees to whom plaintiff compared herself were not similarly situated); *Williams v TWA, Inc,* 507 F.Supp. 293 (W.D.Mo.1980), *aff'd in part rev'd in part*, 660 F.2d 1267 (8th Cir.1981) (evidence of disparate treatment of little probative value where disciplinary measures were imposed by different supervisors at different domiciles).

If the plaintiff succeeds in establishing a prima facie case, an inference or a rebuttable presumption of discrimination is created and the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp*., 411 U. S. at 802, 93 S. Ct. at 1824; *Texas Dept. of Community Affairs*, 450 U.S. at 253, 101 S. Ct. at 1093.

The defendant can rebut the presumption of discrimination by producing some "admissible evidence which would allow the [court] rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs,* 450 U.S. at 257, 101 S. Ct. at 1095. The defendant does not have the burden of persuading the court that it was actually motivated by the proffered nondiscriminatory reasons. *Board of Trustees of Keene State College v. Sweeney,* 439 U. S. 24, 25, 99 S. Ct. 295, 295, 58 L.Ed.2d 216 (1978). The defendant must only

demonstrate that a genuine issue of fact is raised by the evidence as to the reason for the employment decision in order to meet its burden of going forward. *Texas Dept. of Community Affairs*, 450 U. S. at 254-55, 101 S. Ct. at 1094.

The defendant has no obligation to prove by a preponderance of the evidence the existence of nondiscriminatory reasons for its decision. Rather, a plaintiff's prima facie case of discrimination will be rebutted if the employer simply articulates-not proves-a legitimate, nondiscriminatory reason for its action. *Texas Dept. of Community Affairs,* 450 U. S. at 257-58, 101 S. Ct. at 1095-96.

If the defendant meets its burden of going forward, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U. S. at 804, 93 S. Ct. at 1825; *Simpson v. Diversitech General, Inc*., 945 F.2d 156, 158-59 (6th Cir. 1991); *Sims v. Cleland*, 813 F.2d 790, 792 (6th Cir.1987). To demonstrate pretext, a plaintiff may show that the defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Carter v. University of Toledo*, 349 F.3d 269(6th Cir. 2003), quoting *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003).

The plaintiff may establish that the reasons stated are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs*, 450 U.S. at 256, 101 S. Ct. at 1095. A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. The Kroger Co.,* 319 F.3d 858 (6th Cir. 2003), quoting *Dews v. A.B. Dick Co.,* 231 F.3d 1016,

1021 (6ᵗʰ Cir. 2001).

Title VII was not intended to "diminish traditional management prerogatives." *Steelworkers v Weber,* 443 U. S. 193, 207, 99 S. Ct. 2721, 2729, 61 L.Ed.2d 480 (1979); *Wrenn v. Gould,* 808- F.2d 493, 502 (6th Cir.1987). It does not require the employer to restructure its employment practices to maximize the number of minorities and women hired or retained. *Furnco Construction Corp.*, 438 U.S 567, 577-78, 98 S. Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), *cited in Texas Dept. of Community Affairs*, 450 U.S at 259, 101 S. Ct. at 2096. Federal courts are not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies or private employers, *Bishop v. Wood*, 426 U.S 341, 349, 96 Sect. 2074, 2079, 96 S. Ct. 2074 48 L.Ed.2d 684 (1976), and federal statutes prohibiting discrimination are not "intended as the vehicle for general judicial review of business decisions." *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981).

Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules. "Title VII addresses discrimination." *Ferguson v. Veterans Administration*, 723 F.2d 871 (11th Cir. 1984). "Title VII is not a shield against harsh treatment at the workplace." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir.1981) [disapproved on other grounds by *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982)].

The issue in a discrimination case is not whether the basis on which the employer acted in taking a personnel action is "sound"; rather, the issue is whether the reasons articulated by the employer are a pretext for discrimination. *In re Lewis*, 845 F.2d 624, 633 (6th Cir.1988) (emphasis in original). *See also, Nix v. WLCY Radio*, 738 F.2d 1181, 1187, *reh'g denied (en banc),* 747 F.2d 710 (11th Cir.1984) ("Title VII does not require the employer to have good cause for its decisions. An employer may [refuse to promote a person] for a good reason, a bad reason, a reason based on

erroneous facts or for no reason at all, as long as its action is not for a discriminatory reason.").

To establish a *prima facie* case of disability discrimination, a plaintiff must show that 1) he or she is disabled, 2) is otherwise qualified for the job, with or without a reasonable accommodation, 3) suffered an adverse employment decision, 4) the employer knew or had reason to know of his or her disability, and 5) after rejection or termination the position remained open or the disabled individual was replaced. *Hammon v. DHL Airways, Inc.,* 165 F.3d 441, 449 (6th Cir. 1999); *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 882 (6th Cir. 1996); *Monette v. Electronic Data Systems Corp.,* 90 F.3d 1173, 1185 (6th Cir. 1996).

Once a plaintiff establishes a *prima facie* case of disability discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action against plaintiff. *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 520-21 (6th Cir. 1998) Once the employer discharges this burden of production, the employee must demonstrate that the proffered reason was, in fact, a pretext for unlawful disability discrimination. *Id.* at 521. The plaintiff always retains the ultimate burden of persuasion. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 936 (6th Cir. 2000).

A retaliation claim is analogous to an intentional discrimination or disparate treatment case and is subject to the same sequence and burden of proof. *Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002); *Zanders v. National R. R. Passenger Corp.,* 898 F.2d 1127, 1134 (6th Cir. 1990). Plaintiff must first establish a prima facie case by a preponderance of the evidence. The elements of a prima facie retaliation claim are:

> (1) that plaintiff engaged in an activity protected by Title VII;
> (2) that the exercise of plaintiff's civil rights was known to the defendant;
> (3) that, thereafter, the defendant took an employment action adverse to the plaintiff, or the plaintiff was subjected to severe and pervasive retaliatory harassment by a supervisor; and
> (4) that there was a causal connection between the protected activity and the adverse employment action or harassment.

19

*Randolph v. Ohio Dept of Youth Services,* 453 F.3d 724, 736 (6th Cir. 2006); *Morris v. Oldham County Fiscal Court,* 201 F.3d 784 (6th Cir. 2000), explicitly modifying, by adding the harassment language, the prior standard in *Christopher v. Stouder Memorial Hospital,* 936 F.2d 870 (6th Cir. 1991), *citing, Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir. 1987), *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990); *Zanders v. National Railroad Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir. 1990); *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986); *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984). If plaintiff establishes a prima facie case by a preponderance of the evidence, the burden shifts to the defendant to articulate a legitimate, non-retaliatory, reason for its action. *Zanders,* 898 F.2d at 1135. If the employer meets this burden, the employee bears the ultimate burden of persuading the court that the employer's reason is pretextual. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). If a legitimate nonretaliatory reason for the adverse action is articulated by the employer, the presumption of discrimination which flows from the prima facie case is eliminated. *Weems v. Ball Metal & Chemical Division, Inc.*, 753 F.2d 527, 529, n.2 (6th Cir. 1985). The burden of persuasion remains at all times on the plaintiff. *Burdine, supra.*

## Analysis

It is difficult for the Court to understand Plaintiff's claims of race and sex discrimination as to the November 21, 2001, and December 1, 2001, incidents. The first of these incidents can easily be understood as a claim of disability discrimination – Plaintiff claims she was made to do work that conflicted with medical restrictions placed on her by her physician. There is not, however, even an allegation that similarly-handicapped white persons or males were not thus subjected to outside-restriction orders. The unrebutted evidence establishes that the supervisor who made the order, Mr.

Strickland, was not aware of the restriction.  There is no allegation that the incident was repeated such that Plaintiff's medical restrictions were not ordinarily accommodated by the employer.

The December 21, 2001, incident is fully dealt with above.

It has not been shown that the June 4, 2002, and July 1, 2002, incidents have been fully heard at the administrative level, as the Final Agency Decision does not address them.  However, Defendant's Motion establishes that Mr. Hogan did not know of any prior EEO activity at the time he took those actions, so Plaintiff has not established a prima facie case of retaliation for those acts.

Certainly, subsequent incidents such as Plaintiff's final separation from the Postal Service are, as Defendant's Motion shows and Plaintiff admits, subject to separate administrative proceedings which are not yet complete.

It is accordingly recommended that the Complaint herein be dismissed with prejudice as to the incidents of November 21, December 1, and December 21, 2001, and June 4 and July 1, 2002. All other claims should be dismissed without prejudice pending exhaustion of administrative remedies.

May 27, 2008.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate

Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).


      Defendant's Motion is based on Plaintiff's deposition testimony and the affidavits of all the other persons mentioned by her as possibly involved in the incidents of which she complains.  There are essentially no conflicts in the factual statements and, when liberally construed in favor of the Plaintiff, they fail to establish a prima facie case of discrimination against her on any one of the bases she claims.  Simply put, she has not offered the Court any admissible evidence of any discrimination on any prohibited basis.

      Defendant's Motion should be granted and the Complaint herein dismissed with prejudice.

May 1, 2008.